IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:19-CV-255-FL

| | | |
|---|---|---|
| TIFFANY M. DEAVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WOODBURY WELLNESS CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss (DE 17), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action pro se December 30, 2019, by filing a motion to proceed in forma pauperis, along with a proposed complaint, asserting claims for discrimination, retaliation, and wrongful termination. The court granted plaintiff's motion to proceed in forma pauperis and allowed plaintiff's claims to proceed following frivolity review. In the meantime, counsel filed notice of appearance on behalf of plaintiff.

Plaintiff filed the operative amended complaint January 19, 2021, asserting disability discrimination and retaliation, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 and 12117, hostile work environment and race discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and wrongful discharge, in violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen.

Stat. § 95-240 et seq. Plaintiff seeks compensatory and punitive damages, declaratory relief, attorneys' fees, and costs.[1]

On February 1, 2021, defendant filed the instant motion to dismiss, arguing that plaintiff's claims are barred by a Release and Waiver of Employment Rights ("the release") and that plaintiff failed to exhaust administrative remedies with respect to her claim under REDA. In support, defendant relies upon: 1) a memorandum of law; 2) declaration of Judith Bullard ("Bullard"), defendant's administrator; 3) the release; and 4) a copy of a check, written to plaintiff by defendant, in the amount of $100.00. Plaintiff responded in opposition March 3, 2021, relying upon her own affidavit, and defendant replied March 16, 2021.

### STATEMENT OF FACTS

The facts alleged in plaintiff's amended complaint may be summarized as follows. Plaintiff, who is a single mother of five children, began working for defendant in August 2015. (Am. Compl. (DE 16) ¶¶ 7, 9). Approximately two years later, defendant hired Kyna Rose ("Rose") as director of nursing, who allegedly did not have an amenable relationship with plaintiff. (Id. ¶¶ 10-12).

In September or October 2017, an incident occurred with a resident in "100 Hall" in defendant's facility. (Id. ¶ 13). Shortly thereafter, defendant terminated plaintiff. (Id. ¶ 14). Although plaintiff was eventually cleared of any wrongdoing, Rose informed her that an individual named Lucille Batts ("Batts") in the "400 Hall" of defendant's facility did not want plaintiff to return. (Id. ¶¶ 15, 17-19). Plaintiff remained unemployed and filed for bankruptcy. (Id. ¶ 16).

In March 2018, Rose allowed plaintiff to return to work, and plaintiff was assigned to the "400 Hall" of defendant's facility. (Id. ¶¶ 20-21). Upon plaintiff's return, Batts began using plaintiff's

---

[1] This matter was reassigned to the undersigned on January 20, 2021.

2

services more frequently.  (Id. ¶ 22).  Eventually, Batts told plaintiff that she did not have an issue with plaintiff, contrary to what Rose had indicated previously.  (Id. ¶¶ 23-24).

On December 22, 2018, while working a double shift, plaintiff was injured as she assisted a resident into bed.  (Id. ¶ 25).  Plaintiff went to the emergency room and received a doctor's note recommending that plaintiff be assigned to "light duty."  (Id. ¶¶ 27-28).  Plaintiff also filed a workers' compensation claim for her injury.  (Id. ¶ 29).

Approximately two to three weeks later, when plaintiff began her light duty work assignment, her managers and supervisors allegedly began a "severe and pervasive campaign of harassment", allegedly including: 1) an "obsessive and unequal surveillance of Plaintiff and her work"; 2) "interference with Plaintiff sitting for a break due to her injury"; 3) "allocating work which Plaintiff was clearly qualified for to a similarly situated Caucasian coworker after she asked and was denied the work supposedly because she was receiving workers' compensation benefits, however, the similarly situated Caucasian coworker was also receiving workers' compensation benefits"; 4) calling plaintiff to the office for "inconsequential issues"; and 5) creating new rules "to restrict Plaintiff and harass her."  (Id. ¶¶ 31-32).  Plaintiff alleges that Bullard, Donna Sawyer, and Amanda Mills were involved in the harassment.  (Id. ¶¶ 30, 33).

Plaintiff was terminated in February 2019.  (Id. ¶ 34).  Plaintiff alleges that to the extent her claims are barred by the release she signed, plaintiff alleges that the release "is unconscionable, both procedurally and substantively, is a contract of adhesion, was signed under duress or undue influence, and was not signed knowingly and voluntarily."  (Id. ¶ 35).

**COURT'S DISCUSSION**

A.  Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Analysis

   1.  The Release

Defendant argues that plaintiff's claims must be dismissed under Rule 12(b)(6) due to the release,[2] which provides, in pertinent part:

> **RELEASE AND WAIVER OF EMPLOYMENT RIGHTS**
>
> KNOW ALL PERSONS THAT I, TIFFANY DEAVER, hereinafter called "Releasor," in consideration for the payment of One Hundred and 00/100 Dollars ($100.00), to be paid by or on behalf of Woodbury Wellness Center, Inc., with the intention of binding myself as well as my heirs, beneficiaries, and legal representatives, hereby release, waive, and forever discharge Woodbury Wellness Center, Inc., its past and present affiliates, direct and indirect, parents, subsidiaries, predecessors, successors, and assigns, as well as their respective past and present officers, directors, stockholders, owners, employees, attorneys, representatives, agents, and all other related persons, firms, corporations, associations, or partnerships, whether acting as agents or in their individual capacities, hereinafter called "Releasees," from any and all claims, demands, causes of action, and liabilities of any kind whatsoever, whether known or unknown, asserted or unasserted, by reason of any act, omission, transaction, agreement, or occurrence, that Releasor ever had, now has, or, hereafter may have against Releasees, up to and including the date of the execution of the Release and Waiver of Employment Rights, hereinafter called the "Release," and hereby acknowledge full accord and satisfaction of the same.
>
> Without limiting the generality of the foregoing, and to the greatest extent allowable by law, Releasor releases and forever discharges Releasees from any and all claims arising under any constitution, statute, ordinance, administrative promulgation, public policy, or common law, whether federal or state or of any agency or subdivision of the same, relating to or arising from employment with Releasees, the terms, conditions, and benefits relating to employment with Releasees, and the separation from employment with Releasees, including, but not limited to: (I) any and all claims of employment discrimination, harassment, or retaliation including claims pursuant to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866, 1871 and 1991, the Americans with Disabilities Act, the Sarbanes-Oxley Corporate Reform Act of 2002, the North Carolina Equal Employment Practices Act, the North Carolina Persons with Disabilities Protection Act, the North Carolina Retaliatory Employment Discrimination Act, and the Age Discrimination in Employment Act of 1967, as such laws have been amended; (II) any and all claims for wages, bonus compensation, benefits, or leave entitlements, including claims pursuant to the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Family Medical Leave Act, the North Carolina Wage and Hour Act, and the Federal Equal Pay Act, as such laws have been amended; (III) any and all contract claims, claims for slander, libel, defamation, negligent or intentional infliction of emotional distress, personal injury, intentional tort, negligence, and any other claim for damages or injury of any kind whatsoever; and (IV) any and all claims for monetary recovery, including, but not limited to, attorneys' fees, costs, and disbursements.

(Release (DE 19-1) at 1; see Am. Compl. (DE 16) ¶ 35 (referencing the Release)).[3]

"[A]n employee may waive his cause of action under Title VII as part of a voluntary settlement." Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 (1974). "In determining the

---

[2] As stated in more detail herein, the court finds that plaintiff's claims are barred by the release, and dismisses those claims under Rule 12(b)(6). Accordingly, the court does not reach defendant's alternative argument, asserted under Rule 12(b)(1), that plaintiff failed to exhaust her administrative remedies with respect to her claim under REDA.

[3] The court may consider a document that is "integral to and explicitly relied on in the complaint", where as here, the document's authenticity is uncontested. See Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999).

effectiveness of any such waiver, a court [must] determine at the outset that the employee's consent to the settlement was voluntary and knowing." Id. at 52, n. 15. "Settlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement should be measured by the intent of the parties." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 211 (4th Cir. 2009) (quotations omitted).

Settlement releases are analyzed "under ordinary contract principles," based upon "the appropriate state's law for guidance," in the absence of statutorily-mandated requirements for waiver of some types of federal claims, such as those under the Age Discrimination in Employment Act ("ADEA"), 29. U.S.C. § 626(f)(1). O'Shea v. Commercial Credit Corp., 930 F.2d 358, 362 (4th Cir. 1991); cf. Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426–27 (1998) (analyzing requirements for waiver of ADEA claim under federal statutory standards set forth in § 626(f)(1)). Regarding the principles for evaluating a release, the United States Court of Appeals for the Fourth Circuit has observed:

> Some federal courts have misleadingly referred to 'the federal common law of release.' . . . . In O'Shea, we chose not to adopt the federal common law rule used by some circuits for determining the validity of such a release, but rather to rely upon relevant state law principles. The precise ruling in O'Shea has of course been superseded by the limitations on waivers of ADEA rights that Congress created in the Older Workers Benefit Protection Act. See 29 U.S.C.A. § 626(f) (1999). Be that as it may, we note that courts can resolve interstitial questions of federal law either by formulating a federal common law rule or by adopting existing state law. . . .

Kendall v. City of Chesapeake, Va., 174 F.3d 437, 441 n. 1 (4th Cir. 1999); cf. Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. 1981) ("Creation of a federal rule rather than absorption of a state rule is appropriate where, as here, the rights of the litigants and the operative legal policies derive from a federal source. No significant state interest would be served by absorbing state law as the rule of decision governing Title VII settlement agreements."); Melanson v. Browning-Ferris Indus., Inc., 281 F.3d 272, 276 (1st Cir. 2002) ("In determining the validity of a release, this

6

court has adopted a 'totality of the circumstances' approach."); Cassiday v. Greenhorne & O'Mara, Inc., 63 F. App'x 169 (4th Cir. 2003) (affirming district court determination "based on the totality of the circumstances, that [the plaintiff] knowingly and voluntarily waived her rights under Title VII").[4]

Under North Carolina law, "[a] release is the giving up or abandoning of a claim or right to the person against whom the claim exists or the right is to be exercised," and a "waiver is a voluntary and intentional relinquishment of a known right or benefit." Adder v. Holman & Moody, Inc., 288 N.C. 484, 492 (1975). "Whether [an] agreement be called a release, a waiver or be given some other designation . . . [it] is a contract and is therefore subject to the recognized rules of construction of contracts." Id.

"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Phillip Morris USA Inc., 363 N.C. 623, 631 (2009) (internal citation and quotation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693-94 (1949). "Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976); see also Goodman v. Resolution Tr. Corp., 7 F.3d 1123, 1126 (4th Cir. 1993) ("If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law.").

In this case, the agreement at issue includes a plain and unambiguous release of:

---

[4] Plaintiff urges the court to apply a federal common law "totality of the circumstances test" to determine validity of the release. (Pl. Mem. (DE 28) at 6-7). As set forth above, the court does not resolve definitively the test to be applied, where the Fourth Circuit also has not done so in a published opinion, and where the outcome is the same under state law or federal law.

7

any and all claims arising under any constitution, statute, ordinance, administrative promulgation, public policy, or common law, whether federal or state or of any agency or subdivision of the same, relating to or arising from employment with Releasees, the terms, conditions, and benefits relating to employment with Releasees, and the separation from employment with Releasees, including but not limited to: (1) <u>any and all claims of employment discrimination, harassment, or retaliation including claims pursuant to Title VII of the Civil Rights Act of 1964</u>, the Civil Rights Acts of 1866, 1871, and 1991, <u>the Americans with Disabilities Act</u>, the Sarbanes-Oxley Corporate Reform Act of 2002, the North Carolina Equal Employment Practices Act, the North Carolina Persons with Disabilities Protection Act, the <u>North Carolina Retaliatory Employment Discrimination Act</u> . . .

(DE 19-1 at 1) (emphasis added). As shown by the underlined language, the release encompasses the very claims plaintiff asserts in this action. It also memorializes in plain terms defendant's agreement to pay $100.00 as consideration for plaintiff's release of all claims. (<u>Id.</u>). The release is not qualified in any way; it covers all claims "of any kind whatsoever, whether known or unknown, asserted or unasserted, by reason of any act, omission, transaction, agreement or occurrence." (<u>Id.</u>).

The release is a knowing and voluntary release of all claims, based upon its terms and upon consideration of the totality of circumstances alleged. One critical factor bearing upon this determination is that the release provides:

In signing the Release, it is certified that:

1. Releasor has read the entire Release;
2. Releasor fully understands the terms of the Release;
3. Releasor knowingly and voluntarily agrees to the terms of the Release;
4. Releasor is competent to enter into the Release;
5. Releasor agrees that the consideration exchanged is adequate, and is in addition to any payments or benefits to which Releasor is otherwise legally entitled to receive.
6. Releasor enters into the Release after having been advised to consult with legal counsel, and after having had the opportunity to consult with legal counsel.

NOW THEREFORE, TIFFANY DEAVER, Releasor, has executed the Release and Waiver of Employment Rights, this the 8th day of October, 2019.

*[signature]*
TIFFANY DEAVER, "Releasor"

(Release (DE 19-1) at 3). As shown above, by signing the release, plaintiff certified that she read and understood its terms, that she knowingly and voluntarily agreed to such terms, and that she was

8

Case 7:19-cv-00255-FL   Document 31   Filed 08/05/21   Page 8 of 11

competent to do so. This certification is conspicuously written in bold letters, directly above plaintiff's signature.

It is also critical to finding a knowing and voluntary waiver under the circumstances alleged that the release is only three pages long and uses clear language, as plaintiff concedes. (See Mem. (DE 28) at 7). Regarding opportunity for review, the release allows plaintiff to disclose its contents to her "attorneys or certified public accountants", her "spouse", and "governmental taxing authorities", and it expressly advises her to consult with an attorney. (Release (DE 19-1) at 2-3). Moreover, the release does not impose a deadline by which plaintiff must sign, and it includes certification that plaintiff has had an opportunity to consult with legal counsel. See id.

Finally, plaintiff received $100.00 as consideration for waiver of her claims. Contrary to her signed certification that "the consideration exchanged is adequate", (see Release (DE 19-1) at 3), plaintiff now argues the consideration is inadequate. To be sure, this is not a very large sum of money. However, no one factor is dispositive on the question of waiver, see, e.g., Melanson, 281 F.3d at 276, and where all other factors weigh in favor of waiver, the court finds the release to be a knowing and voluntary release of all claims based upon the totality of the circumstances alleged.

Relying on her own affidavit, plaintiff argues that she did not sign the release knowingly and voluntarily because she did not review the release or negotiate its terms, her attorney did not explain the release to her, and she has a high school diploma and has only taken a few college courses. (Mem. (DE 28) at 7-8). However, plaintiff does not allege these facts in her amended complaint, so the court cannot consider them in adjudicating the instant motion to dismiss. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.").

9

In sum, the instant claims by plaintiff against defendant are barred and must be dismissed as a matter of law.

2. Duress, Undue Influence, Unconscionability

Plaintiff alleges that the release "is unconscionable, both procedurally and substantively, is a contract of adhesion, was signed under duress or undue influence, and was not signed knowingly and voluntarily." (Am. Compl. (DE 16) ¶ 35). This conclusory assertion, devoid of factual enhancement, is insufficient to plausibly allege duress, undue influence, or unconscionability. To the extent plaintiff relies on her allegations of financial stress resulting from job loss, such allegations do not amount to duress. See e.g., Melanson, 281 F.3d at 277 ("Nor may incapacity or duress, without more, be inferred from merely the emotional and financial stress associated with loss of a job. To hold otherwise would be to make it virtually impossible for employers and employees to enter into binding settlements of employment disputes occasioned by job losses, lay-offs and the like."); Lewis v. Extended Stay Am., Inc., 454 F. Supp. 2d 453, 458 (M.D.N.C. 2006) ("Personal economic burdens resulting from the loss of a job do not, generally speaking, constitute 'duress' for the purpose of invalidating a termination release." (citations omitted)); Cassiday v. Greenhorne & O'Mara, Inc., 220 F. Supp. 2d 488, 492 (D. Md. 2002) ("[B]oth law and policy suggest that one's personal economic burdens resulting from the loss of a job, should not constitute 'duress' for the purpose of invalidating a termination release.").

In sum, plaintiff has not alleged facts giving rise to a plausible claim of duress, unconscionability, or undue influence.[5]

3. Request for Attorneys' Fees and Costs

---

[5] The court does not reach defendant's argument that, assuming arguendo the release was unconscionable or signed under duress, plaintiff ratified the release by accepting consideration, or plaintiff's rebuttal argument that she is now willing to return the consideration, because both arguments rely on facts that are not alleged in plaintiff's amended complaint.

Defendant requests that plaintiff be ordered to pay its attorneys' fees and costs associated with this action, pursuant to Federal Rule of Civil Procedure 54(d). As an initial matter, the motion is premature because judgment has not entered in this case. In addition, the court finds that an award of fees and costs to defendant is not warranted under present circumstances. Plaintiff has not pursued frivolous, unreasonable, or groundless claims, or continued to litigate after her claims clearly became so. Accordingly, defendant's request for attorneys' fees and costs is denied.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss is (DE 17) GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. Plaintiff is allowed leave to file a second amended complaint within 21 days of the date of this order. In the event plaintiff does not do so, without further order of the court, the clerk shall enter judgment in favor of defendant on the basis of this order, and close this case.

SO ORDERED, this the 5th day of August, 2021.

LOUISE W. FLANAGAN
United States District Judge